CASE No. 983.

### FRIPP *v.* WILLIAMS, BIRNIE & CO.

1. Motion to dismiss appeal not entertained, the proper notice not having been given.
2. The statements made by a partner after dissolution of the partnership, concerning a debt due by the firm, is competent evidence against the other partner, when offered *after* evidence *aliunde* has been introduced of the partnership, and of the existence of such debt.
3. Objection to the competency of evidence not taken at the time when the evidence is offered, cannot be afterwards raised.
4. A loan was obtained by a partnership firm from a bank upon the deposit of certain railroad securities, and afterwards, upon the order of the firm written by one of the partners, such securities were surrendered to an agent of the firm in exchange for certain municipal bonds belonging to a third party, fraudulently so applied by such partner, which bonds were subsequently sold by the bank and the proceeds credited upon the indebtedness of the firm. In an action by the owner of these bonds against the firm for their recovery, it is not necessary for the plaintiff to show, in order to fix a liability upon the innocent partner, that the railroad securities went back into the assets of the firm, or in some way were of benefit to the firm after they were released.
5. Article IV., Section 26, of the constitution of this state, which provides that judges shall not charge juries in respect to matters of fact, considered.

Before PRESSLEY, J., Charleston, March, 1880.

This was an action commenced August 7th, 1879, by Florian C. Mey against George W. Williams and William Birnie, co-partners, doing business under the firm name of Williams, Birnie & Co., for the recovery of thirty-four bonds of the city of Savannah, new, of the par value of $33,500. F. C. Mey having afterwards died, Harriet A. Fripp and Edward McCrady, Jr., executors of his will, were substituted upon the record as plaintiffs. Williams defended; Birnie was not served.

The defendants were partners, doing a general commission and banking business in the city of New York, from May 1st, 1877, until May 20th, 1879. On April 29th, 1879, F. C. Mey sent

to Williams, Birnie & Co., thirty-three bonds of city of Savannah, new, for $1000 each, and one like bond for $500, with instructions to collect the past-due coupons, and to hire a box in the vault of the safe deposit company, and to put the bonds in the box, and keep the key until he went to New York in the summer. These instructions were carried out, according to the statements in letters received by Mey from Williams, Birnie & Co., one of which enclosed a receipt for $15, for one year's hire of box in the safe deposit company's vault. This receipt was dated May 2d, 1879, and was in the names of " William Birnie and Florian C. Mey." This receipt was sent to Mey, enclosed in a letter signed Williams, Birnie & Co., which stated that they had placed the key in an envelope addressed to him, and put in their safe. Mey made no complaint as to the form of the receipt.

Birnie obtained large loans from the Fourth National Bank of New York, in the name of the firm, upon the credit of collaterals deposited, Greenville and Columbia R. R. bonds and others, without the knowledge of Williams, and without any entries upon their books showing such loans, One loan of August, 1877, for $25,000, and one of March, 1879, for $15,-000, were secured by these railroad bonds and others. On May 12th, 1879, a clerk of Williams, Birnie & Co. presented to the bank an order in the handwriting of Birnie, signed with the firm name, directing certain of these deposited bonds to be released, and thirty-four city of Savannah bonds, new, par value $33,500, to be substituted in their stead, which was done. These were Mey's bonds. The evidence does not further trace the surrendered bonds. Upon due notice given, these Savannah bonds were sold by the bank December 10th, 1879, for $23,422, which was credited upon the indebtedness of Williams, Birnie & Co.

In June, 1879, demand was made by Mey upon Birnie for the Savannah bonds, and also for the keys of the box in the safe deposit company's vault. A like demand was made upon Williams in July following. Mey did not recover the bonds so demanded, nor any of them, nor the keys.

At the trial, and after proof of partnership and debt, as stated

in the opinion, the testimony of John Grimball, Esq., of New York, taken by commission, was offered to prove the demand on Birnie for the bonds and keys, and what Birnie then said about the matter. Upon objection, the court ruled that demand and non-delivery might be proved, but that as this conversation was subsequent to the dissolution of the partnership, the statements and admissions of Birnie were inadmissible against Williams, and Birnie not being before the court disputing the complaint, the testimony could not be introduced at all.

Verdict for defendant. Plaintiffs moved for a new trial, which was refused, and they appealed, upon the following grounds:

1. That the plaintiffs were entitled, on the trial, to have read to the jury the testimony of Mr. Grimball as to the declarations and admissions of Birnie, the co-partner of Williams, having relation to a state of facts existing during the co-partnership, although made after the dissolution of the firm, and that his Honor should not have excluded it, and erred in doing so.

2. That the letter of Williams, Birnie & Co., of May 2d, 1879, was not evidence of the fact that the bonds were placed in a box of the safe deposit company, taken for Mey, as he had instructed them, and that his Honor should so have charged the jury as requested by the plaintiffs, and erred in refusing to do so.

3. That his Honor erred in charging the jury that the plaintiffs must show that the securities upon which the loan to Williams, Birnie & Co. was originally made, actually went back into the assets of the firm, and that the firm received the benefit of them, notwithstanding it was in evidence that they had been withdrawn by the order of the firm and delivered to the agent of the firm.

4. That his Honor erred in that he charged the jury in respect to matters of fact.

On November 22d, 1880, defendant Williams gave notice in writing to plaintiffs that he would move the Supreme Court on Monday, November 29th, 1880, to dismiss the appeal for irregularities in preparing and serving the case. The rule of this court required eight days' notice to be given of such motions, and that

the motion should be made on "the day fixed for the call of causes from the Circuit to which it appertains." The day fixed for this Circuit at this term was Tuesday, November 30th.

*Messrs. McCrady & Son,* for appellants.

*Messrs. Henry Buist* and *A. G. Magrath,* contra.

March 5th, 1880. The opinion of the court was delivered by McIVER, A. J. This was an action originally brought by Florian C. Mey, and after his death continued by his executors, to recover certain bonds of the city of Savannah, or the value thereof, together with the amount collected on the coupons of said bonds, which he sent to Williams, Birnie & Co., in New York, to be deposited in a box in the vault of the safe deposit company of that city, but which, he alleged, were embezzled and fraudulently misapplied by Williams, Birnie & Co. to their own use.

The defence set up by the defendant George W. Williams (the other defendant, William Birnie, having made default,) while admitting that a partnership did exist between himself and Birnie at the time the bonds in question were sent to the firm by Mey, is, that he is not liable for the fraudulent conduct of Birnie, because the transaction in regard to the bonds in question between Mey and Birnie was entirely unknown to him at the time; that it was not a transaction within the scope of the partnership, and that he derived no benefit from it.

At the opening of the case a motion to dismiss the appeal was submitted, but as proper notice of this motion had not been given, it is unnecessary to notice the grounds upon which it was based, as they are not properly before us for consideration, and we will, therefore, proceed at once to consider the case on its merits.

It would be impracticable to give a statement of the facts of this case without extending this opinion to an unwarrantable length. We propose, therefore, to confine our attention to the several questions raised by this appeal, only referring to so much of the evidence as is necessary for a proper understanding of those

questions.   The first point raised is as to the admissibility of the testimony of John Grimball.   He was offered as a witness to prove that, after the partnership between Williams and Birnie had been dissolved, he, as agent of Mey, had made a demand on Birnie for the bonds in question, and for the key of the box in the vault of the safe deposit company which was alleged to have been rented for Mey.   Precisely what occurred in the Circuit Court when the testimony of this witness was offered is not very clearly shown in the " case " as submitted here, and is a matter in dispute between the counsel—those on one side contending that they were not permitted to prove even the demand and non-compliance with it, while on the other side it is insisted that the whole of the testimony was not ruled out, but only so much of it as tended to prove what Birnie said as to the disposition which had been made of the bonds and the key of the safe.   Taking either view, however, we think there was error in rejecting the testimony.   The conversation sought to be proved by this witness took place after the partnership had been dissolved, and while the general rule is that the statements or admissions of one partner, made after the dissolution of the partnership, as to what occurred during the existence of the partnership, are not compe-tent evidence against his co-partner, yet when such evidence is offered after there has been other evidence adduced of the fact of the partnership and of the existence of the debt or liability re-ferred to in such statements or admissions, they then become admissible.   In other words, the statement or admission of a third person that he had been in partnership with another will not be sufficient to establish the partnership as against such other person, nor would the statements or admissions of one partner, made after the dissolution, of themselves be competent evidence of the existence of a debt or liability as against his former part-ner ; but after evidence *aliunde* has been adduced tending to show the existence of the partnership and of the debt or liability re-ferred to, then any statement or admission of one of the partners, even though made after the dissolution of the partnership, *rela-ting to such debt or liability,* is competent evidence against the other partners.   In the first case upon this subject in our books (*Simpson* ads. *Geddes,* 2 *Bay* 533,) it was held that the admission

of a debt contracted during the existence of the partnership, made by one of the partners after dissolution, was, of itself, sufficient to bind the other partner; and this doctrine was expressly approved in the subsequent case of *Kendrick* v. *Campbell,* 1 *Bail.* 522, which case was itself recognized and followed in the case of *Allen* v. *Owens,* 2 *Spears* 170. But in the more recent case of *Meggett* v. *Finney,* 4 *Strob.* 220, this doctrine was qualified as above stated, and the rule there laid down is, that without evidence *aliunde* of the existence of the debt during the continuance of the partnership, the admission of a partner, made after the dissolution of the partnership, will not be sufficient to establish a debt against a former partner. This case, however, still recognizes the doctrine that where the partnership has been established and there is testimony *aliunde* tending to show the existence of the debt during the continuance of the partnership, then the statements or admissions of a partner, made after the dissolution, *in reference to such debt* are competent evidence against the other partner. Now to apply this doctrine to the case under consideration. If it had been proposed to prove the statements or admissions of Birnie, made after the dissolution of the partnership, in regard to the claim made by Mey against Williams, Birnie & Co., before any evidence *aliunde* had been offered tending to show the existence of such a claim during the continuance of the partnership, then the statements or admissions of Birnie would not have been competent as against Williams. But in this case, as we understand it, the testimony of Grimball was not offered until after the partnership had been established by the admission of Williams in his answer, and evidence had been adduced in the form of a letter from the firm, written while the partnership was in existence, acknowledging the receipt of the bonds in question and undertaking to dispose of them as directed by Mey, together with evidence that the bonds had not been so disposed of, as shown by the failure to comply with the demand for their delivery. There was, therefore, evidence *aliunde* tending to show the liability of the partnership for the bonds thus traced to their possession, and the testimony of Grimball was offered merely to show what one of the partners said had been done with the bonds, not to originate a liability on the part of

the firm, but after evidence of such liability had been adduced *aliunde* to show what one of the partners said *in reference to such liability.* We think, therefore, that the testimony of Grimball was competent and should have been received, not merely to show a demand on Birnie for the bonds and his failure to deliver them, but also to show what he said as to the disposition made of the bonds by the partnership while it was in existence.

The next question raised by the appeal is whether the letter of Williams, Birnie & Co., of May 2d, 1879, was any evidence of the fact that the bonds in question had been placed in a box in the vault of the safe deposit company, as directed by Mey. We do not see how any objection to the competency of this letter or any part of it could be raised, inasmuch as no objection was made at the time it was offered in evidence. To enable appellants to raise this question it should have been made to appear that the letter, or such portion of it as is deemed objectionable, was objected to at the time it was offered. As this does not appear, the objection cannot now be made. *Burris* v. *Whitner*, 3 *S. C.* 510.

The third question raised by this appeal is whether the Circuit judge erred in charging the jury that the plaintiff must show that the securities upon which certain loans were alleged to have been originally made by the Fourth National Bank of New York to Williams, Birnie & Co. went back into the assets of that firm, and that the firm received some benefit from them after they were released by the substitution of Mey's bonds.

For a proper understanding of this question a brief statement of facts will be necessary. It appeared that Birnie, without the knowledge of Williams, but while the partnership was in existence, had opened what may be called a demand loan account with the Fourth National Bank of New York, in favor of Williams, Birnie & Co., under which arrangement the bank advanced, from time to time, considerable sums of money, charging the same on their books to Williams, Birnie & Co., but taking no notes or other evidences of indebtedness therefor, which advances or loans were secured by the deposit of bonds as collateral securities. Two of these loans, one made August 28th, 1877, for $25,000, and the other made March 22d, 1879, for $15,000, were origi-

nally secured by a deposit of sundry railroad bonds, but on May 12th, 1879, these railroad bonds were withdrawn and the bonds of the city of Savannah, belonging to Mey, were substituted in their place. This was effected by a written order signed Williams, Birnie & Co., in the handwriting of Birnie, addressed to the cashier of the bank, directing him to substitute the Savannah bonds for the said railroad bonds as collateral security for the two loans above referred to. This order was delivered at the bank by a clerk of Williams, Birnie & Co., to whom the railroad bonds were surrendered. This transaction took place eight days before the partnership of Williams, Birnie & Co. was dissolved.

It thus appears that by the improper use of Mey's bonds, certain other bonds which had been previously pledged by Williams, Birnie & Co. as collateral security for a debt purporting to be due by them to the bank, were released and restored to the possession of Williams, Birnie & Co., or, at least, were delivered upon their written order to their agent or clerk. Now, if by reason of this transaction Mey lost his bonds, it certainly cannot make any difference whether Williams, Birnie & Co. realized any benefit from the bonds so restored to them. If they had been destroyed or stolen immediately after they were returned to Williams, Birnie & Co., it is difficult to see how that could relieve them from responsibility for Mey's bonds if they were improperly used by and went to pay the debt of that firm to the bank. The railroad bonds which were released by the improper use of Mey's bonds, belonged either to Birnie or to Williams, Birnie & Co., or to some third person. If they belonged to Birnie and had been pledged for a debt of the firm and never redeemed, the firm would have been liable to Birnie for their value. So, too, Birnie would have had the right, with the consent of the bank, to withdraw these bonds and substitute others in their place. But if they belonged to a third person, and had been lost to such third person by being pledged for a debt of the firm, the firm certainly would have been liable for their value, and if the firm was relieved from such liability by the improper use of Mey's bonds, that would be a benefit to the firm, even though there was no evidence as to what was done with the railroad bonds after they were withdrawn from the bank. And, cer-

tainly, if these railroad bonds belonged to the firm, and were released and restored to the possession of the firm by the substitution of Mey's bonds, that would be sufficient to fix the liability of the firm, even though the railroad bonds may have afterwards been destroyed or stolen or otherwise improperly disposed of. It seems to us clear that if the debt of $40,000 to the bank was a debt for which the firm was liable, and if it has been partially paid by the improper use of Mey's bonds, the firm would be liable to Mey to the extent of such payment. In the case supposed it would be quite certain that Williams, Birnie & Co. have had their debt partially paid by the wrongful use of funds belonging to Mey, and they would be bound to make restoration to him. We cannot agree, therefore, with the Circuit judge that, in order to fix the liability of the firm, it was necessary to show that the railroad bonds released by the substitution of Mey's bonds, went back into the assets of Williams, Birnie & Co., and that the firm subsequently received some benefit from them.

The last point made by the appeal is, that the Circuit judge erred in charging the jury " in respect to matters of fact." The specifications of the particulars alluded to in this ground of appeal are that the judge stated to the jury that there was no proof that the railroad bonds released by the substitution of Mey's bonds went back into the assets of Williams, Birnie & Co., and that the firm received the benefit of them; that the proof that the firm of Williams, Birnie & Co. received any benefit from the act of Birnie in releasing the railroad bonds by the substitution of Mey's bonds was deficient, and that there was no proof that they did receive any benefit from the release of said bonds.

The object of the section of the constitution referred to in support of this ground, (Section 26, Article IV.,) as we understand it, is to prevent the judge from impressing upon, or even indicating to the jury the conclusions to which the evidence adduced in any case has brought his mind. Hence, if there is any evidence whatever as to a fact in issue, it is error to charge the jury that there is no proof of such fact. *Carrier* v. *Hague,* 9 *S. C.* 454. But if there is no evidence tending to prove a fact in issue, then it is no violation of the constitution to so instruct the

jury. *Redding* v. *Railroad Co.*, 5 *S. C.* 69, 70. In this case the point in issue, as submitted by the charge, was whether the railroad bonds went back into the assets of Williams, Birnie & Co., and that firm got the benefit of them. It is true that there was some evidence that the bonds went back into the assets of Williams, Birnie & Co., inasmuch as there was evidence that they were delivered to an agent or clerk of that firm upon a written order, signed in the name of the firm, and the inference would be as we have shown that the firm must have received a benefit from the release of these bonds; but there was no evidence whatever as to what became of the bonds after they were delivered to the clerk of Williams, Birnie & Co., or whether they were ever afterwards used in any way for the benefit of that firm, and that, manifestly, was the real point in the mind of the judge when he told the jury that there was no proof upon that subject. But this is not a practical question in this case, and need not be considered further, inasmuch as we have seen that it was not material or necessary to show that the railroad bonds, after they were released by the substitution of Mey's bonds, were used for the benefit of the firm.

The judgment of the Circuit Court is set aside and a new trial is ordered.

SIMPSON, C. J., and McGOWAN, A. J., concurred.